**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| PAMELA L. GASKINS, | ) | CASE NO. 3:20-CV-01063-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Pamela L. Gaskins ("Gaskins" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On August 15, 2017, Claimant filed applications for and Disability Insurance Benefits ("DIB") and SSI, alleging a disability onset date of May 15, 2006.  The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  (ECF No. 13, PageID #: 261).  On January 4, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 13, PageID #: 126).  On April 10, 2019, the ALJ issued a written decision finding

1

Claimant was not disabled.  (ECF No. 13, PageID #: 100).  The ALJ's decision became final on

April 2, 2020, when the Appeals Council declined further review.  (ECF No. 13, PageID #: 89).

On May 15, 2020, Claimant filed her Complaint to challenge, in part, the

Commissioner's final decision.[1]  (ECF No. 1).  The parties have completed briefing in this case.

(ECF Nos. 15, 17, 18). Claimant asserts the following assignments of error:

> (1)  The ALJ's determination that the opinions of the state
> evaluators were either "persuasive" or "somewhat persuasive"
> and that the opinions of Claimant's primary care providers
> were "unpersuasive" constituted error and is not supported by
> substantial evidence.

> (2)  The ALJ erred by not following the requirements of SSR 96-
> 8p when making the RFC finding, and the RFC finding is not
> supported by substantial evidence.

> (3)  (3) The ALJ erred by failing to follow SSR 16-3p when
> assessing Claimant's credibility, and the ALJ's credibility
> finding is not supported by substantial evidence.

(ECF No. 15 at 3).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant alleges disability due to physical symptoms of
> obesity, bilateral degenerative joint  disease and osteoarthritis of
> the knees, asthmatic bronchitis, right shoulder adhesive
> capsulitis/moderate degenerative changes, diabetes mellitus, and
> binge eating disorder, including  shortness of breath and
> difficulties performing exertional or postural activities (5E;
> Hearing  Testimony). At the hearing, she testified that she
> experiences shortness of breath that doctors have not been able to
> diagnose. She  described knee pain that prevents her from

---

[1] Claimant challenges only the ALJ's SSI decision. Accordingly, the relevant time period
is August 15, 2017 through present. (ECF No. 15 at 4).

completing medically recommended physical activity five times per week for thirty minutes each time.  She stated that she utilizes pain medication and pain cream for her knee pain and that she has received steroid injections for the pain previously. She reported using a prescribed walker to assist her in ambulating. She also described right shoulder pain that has resolved with physical therapy. As for her diabetes mellitus, the claimant claimed that she experiences fluctuating blood sugar levels but that she stopped taking medication for her diabetes mellitus due to "side effects." In terms of her daily routine, she said that she typically spends much of her day laying down in bed and watching television or playing on her phone.  She said that she has difficulty doing laundry, vacuuming, and bathing, though she can sweep, cook, dust, grocery shop using an electric cart, and do dishes while seated.  She estimated that she could sit for approximately an hour or two, lift and carry a gallon of milk with both hands, and never walk or stand for long periods.  In addition,  she claimed that she could push and pull with her arms but not with her legs, bend, climb stairs  with a handrail, reach her arms overhead, and use her hands to manipulate objects, though she could not squat or crawl (Hearing Testimony).  The claimant believes that these physical symptoms cause her to be disabled.

As for her mental impairments, the claimant alleges that they affect her abilities to concentrate, complete tasks, get along with others, and handle stress (5E; Hearing Testimony). She testified to experiencing anxiety, panic attacks, hives, and feeling as if she may die when she thinks of attending a job interview.   She reported being fired from her last job due to interpersonal difficulties and claimed that she has difficulty being around large groups of people.  She reported taking medication for her mental impairments in the past, but noted that the medication was stopped because her doctor indicated that she had an allergic reaction to the medication.   She testified that she does not believe she can take other mental health medication because medications make her "feel funny."  She also reported attending mental health appointments  prior to 2009 but said that  she did not continue seeking mental health treatment after that time because "there was no reason"  to do so, as she was told that her panic attacks would resolve with time (Hearing Testimony). For these reasons, the claimant believes she is disabled.

(ECF No. 13, PageID #: 111).

**B.  Medical History**

3

Claimant has several mental and physical impairments, which she argues prevent her from engaging in substantial gainful activity. The ALJ summarized Claimant's medical history as follows[2]:

> The record documents a history of binge eating disorder and Body Mass Index (BMI) levels in excess of 40 (2F/22; 6F/42; 12F/5). This disorder and associated elevated BMI levels could reasonably be expected to aggravate the claimant's knee pain and asthmatic bronchitis. During the period at issue, the claimant reported symptoms of bilateral knee pain, weakness, falls, shortness of breath, and right shoulder pain (2F/8, 33, 55, 111; 9F/4; 12F/3; 13F/19; 18F/5). Upon examination, providers have noted signs of elevated glucose levels, decreased range of motion of the right shoulder, and tenderness of the bicipital groove and right upper arm (2F/10, 144; 14F/30; 18F/2, 5; 21F/115). They have also noted one instance in November 2017 where the claimant appeared uncomfortable and had difficulty performing heel and toe walking (14F/19). They have prescribed pain medication, administered corticosteroid injections for her right shoulder pain, advised her to change her diet, and recommended she attend physical therapy for her right shoulder impairment-which she subsequently completed (2F/l 7; 14F/20, 25, 29; 18F/2, 5; 19F). They also prescribed the claimant a handicapped parking placard after the claimant requested one due to alleged difficulty walking from stores to parking lots (14F/28). In addition, medical imaging of the claimant's bilateral knees has shown degenerative joint disease of the bilateral knees (2F/191-92). [ ]
>
> [ ] Although the claimant alleged being able to perform limited exertional or postural activities due to pain and shortness of breath, medical providers throughout the periods at issue typically described her to be in no acute distress during appointments (2F/6, 9; 7F/4; 12F/5; 14F/6). During such examinations, the providers did not regularly note a significant reduction in the claimant's ranges of motion, strength, or cranial nerves (2F/63, 65, 99; 18F/2, 5; 19F/2; 21F/98, 114, 121). Furthermore, the record indicates that surgery was neither suggested nor required for the claimant's physical ailments, but rather that her pain was treated conservatively with physical therapy, pain medication, and injections (2F/l 7; 18F/2, 5; 19F). [ ]

---

[2] Because of the limited scope of Claimant's issues on appeal, the Court finds the ALJ's summary of facts sufficient here. Additional facts are included in the analysis when necessary.

[  ] Although the claimant testified to shortness of breath, respiratory examinations conducted during the periods at issue found the claimant to have  normal  breath sounds and effort with lungs clear to auscultation and percussion (2F/9; 21F/64, 69, 77, 82, 86, 98, 114).  Pulmonary function studies revealed normal results, while medical imaging of the claimant's chest showed no acute intrathoracic abnormalities (2F/190).  In fact, a medical provider noted that there was "no obvious cause apparent" for the claimant's shortness of breath on exertion (12F/7). [ ] [T]he record indicates that the claimant received a prescription for the walker after requesting it from a medical provider due to self-reported "falls" (21F/32).  These falls were rarely complained of by the claimant and are unsupported by the record, which does not document notable reductions in strength or motor functioning during the periods at issue (1F- 23F).  Instead, the claimant's gait was generally described as normal, steady, or independent (l0F/5, 9; l7F/3, 6, 10; 19F/5).  In addition, the record rarely-if ever-notes use of a walker during the relevant periods, suggesting that the claimant does not require a walker to ambulate. [ ]

[ ] Medical providers often recommended that the claimant make changes to her diet and perform physical activity five times per week for thirty minutes each time to alleviate symptoms from these impairments (14F/20, 25, 29).  Nevertheless, treatment notes document that the claimant did not follow-or continue to follow-such recommendations (14F/34; 21F/124).  Although the claimant testified at the hearing that she does not exercise because of knee pain, providers rarely described her to have difficulties ambulating and, in fact, generally described  her gait as normal, steady, or independent during the periods at issue (10F/5, 9; l7F/3, 6, 10; 19F/5; Hearing Testimony). In addition, providers did not regularly note a significant reduction in the claimant's ranges of motion, strength, or cranial nerves (2F/63, 65, 99; 18F/2, 5; 19F/2; 21F/98, 114, 121). [ ]

[ ]

[ ] The claimant has a conservative treatment history that consisted primarily of counseling and medication management during the periods at issue (1F; 8F; l0F; 16F; 17F; 23F).  Although she alleges difficulty concentrating, mental status examinations typically found her to be  alert and oriented with intact attention, memory, cognition, thought processes, thought  content, insight, judgment, and intelligence (2F/10, 19; 8F/2, 3; 9F/6, 7; l0F/5, 6, 9, 10; 12F/5; 13F/7, 16;  14F/14, 31).  [ ]

5

> [ ] Although the claimant alleges difficulty being around others and dealing with stress, providers frequently described her as cooperative, though she often appeared anxious or depressed (8F/2, 3; 9F/6; l0F/5, 9, 10; 13F/16; 14F/14). Her providers also noted her to have normal speech and eye contact during most appointments and no difficulties with her appearance or hygiene (8F/2, 3; 9F/6; l0F/5, 9; 12F/5; 13F/16; 14F/14).

(ECF No. 13, Page ID #: 111-113).

## C. Opinion Evidence

### 1. State Agency Medical Consultants, Leigh Thomas, M.D. and Leon Hughes, M.D.

Upon initial review and reconsideration, both Drs. Thomas and Hughes found that Claimant could perform a reduced range of light work. Specifically, that Claimant could frequently kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds, but that she should avoid even moderate exposure to unprotected heights and scaffolds. (ECF No. 13, Page ID #: 189-90, 206-07).

The ALJ found their opinions somewhat persuasive and explained that they were supported with a review of the medical evidence and function reports available to them. (ECF No. 13, PageID #: 114). The ALJ further explained that "[t]heir opinions are consistent with evidence discussed above describing a normal, steady, or independent gait and not regularly noting a significant reduction in the claimant's ranges of motion, strength, or cranial nerves (2F/63, 65, 99; l0F/5, 9; 17F/3, 6, 10; 18F/2, 5; 19F/2, 5; 21F/98, 114, 121)." (ECF No. 13, PageID #: 114). However, the ALJ further limited the claimant's "postural duties to accommodate her obesity and knee impairments (2F/22, 191-92; 6F/42; 12F/5)." (ECF No. 13, PageID #: 114).

### 2. State Agency Psychological Consultants, Vicki Warren, Ph.D. and Aracelis Rivera, Psy.D.

Upon initial review and reconsideration, both Drs. Warren and Rivera each opined that Claimant could perform one- to four-step moderately complex work tasks without strict, fast-paced production demands; could maintain occasional and superficial interaction with coworkers and supervisors but could have no interaction with the general public; and could perform work tasks in a relatively static setting without frequent changes in job duties.  (ECF No. 13, Page ID #: 191-93, 208-10, 224-26, 238-40).

The ALJ found their opinions persuasive and explained that they were supported with a review of the medical evidence, treatment notes, and function reports available to them. (ECF No. 13, PageID #: 114). Additionally, the ALJ found that the opinions were consistent with the evidence. (ECF No. 13, PageID #: 114).

### 3.  Consultative Examiner, Andria L. Doyle, Ph.D.

On October 24, 2017, Claimant attended a consultative examination with Dr. Adria L. Doyle. (ECF No. 13, PageID #: 958-967). Dr. Doyle found that Claimant did not have significant limitations in understanding, remembering, and carrying out instructions; did not have gross deficits in attention but had some difficulty in maintaining persistence and pace; and had few limitations to perform simple tasks or multi-step tasks. She found that Claimant had significant interactional difficulties and moderate depressive symptoms that would likely interfere with work-related stress tolerance abilities.  Dr. Doyle also found that the claimant might respond negatively to perceived pressures at work and have difficulty getting along with others in the workplace. (ECF No. 13, PageID #: 959).

The ALJ found Dr. Doyle's opinion somewhat persuasive and explained:

> Dr. Doyle supported her opinion with an interview of the claimant
> and a review of treatment records provided to her at that time.  The
> undersigned finds Dr. Doyle's opinions regarding the claimant's

> abilities to understand, remember, and carry out instructions and to maintain attention, concentration, persistence, and pace to be persuasive because they are consistent with evidence of the claimant appearing alert and oriented with intact attention, memory, cognition, thought processes, thought content, insight, judgment, and intelligence (2F/10, 19; 8F/2, 3; 9F/6, 7; l0F/5, 6, 9, 10; 12F/5; 13F/7, 16; 14F/14, 31). However, the undersigned finds Dr. Doyle's opinion regarding the claimant's ability to interact with others to be unpersuasive because it was based entirely on the claimant's own self-reports, calling into question the accuracy of Dr. Doyle's assessment in this area. Similarly, the undersigned finds Dr. Doyle's opinion regarding the claimant's ability to adapt or manage herself to be only somewhat persuasive to the extent that it corresponds with the residual functional capacity. Dr. Doyle's assessment in this area was based on the claimant's own self-reports about returning to prior work, which has little to do with the claimant's ability to work in other environments where her limitations could be accommodated.

(ECF No. 13, Page ID #: 115).

### 4. Warren Morris, M.D.

Claimant's primary care physician, Dr. Warren Morris, completed a diabetes questionnaire on April 17, 2018. (ECF No. 13, PageID #: 1074). Dr. Morris found that the claimant could perform a reduced range of sedentary work. (ECF No. 13, PageID #: 1074). Specifically, he found that Claimant could work for two hours per day, stand for no more than 30 minutes at one time, sit for no more than 60 minutes at one time, stand or walk for no more than two hours total in a workday, lift no more than five pounds, and never balance. (ECF No. 13, PageID #: 1074). In addition, Dr. Morris found that the claimant would need to elevate her legs to waist-level frequently in a workday. (ECF No. 13, PageID #: 1074).

The ALJ found Dr. Morris's opinion unpersuasive as he failed to support the opinion with reference to information that he relied upon. (ECF No. 13, PageID #: 115). Additionally, the ALJ explained that Dr. Morris's relatively short treatment time with Claimant called into question the opinions accuracy and reliability. (ECF No. 13, PageID #: 115). Finally, the ALJ

stated that the opinion was inconsistent with the record evidence. (ECF No. 13, PageID #: 115).

### 5. Michele Ralofsky, M.D.

Dr. Ralofsky found that Claimant could not return to school on March 28, 2011. (ECF No. 13, PageID #: 483). Dr. Ralofsky stated that Claimant could return to school on March 29, 2011 without limitation to her activities. (ECF No. 13, PageID #: 483).

The ALJ found R. Ralofsky's opinion unpersuasive and explained that it was unsupported, inconsistence with the evidence, limited in scope and duration, and lacking "indication that it was intended to act as a longitudinal assessment of Claimant's functional limitations." (ECF No. 13, PageID #: 115).

### 6. Robin Stufflebean, R.N., L.L.C.D.C, L.P.C.

On May 22, 2018, Nurse Stufflebean completed a "Mental Impairment Questionnaire" in May 2018. (ECF No. 13, PageID #: 1077-81). She opined that Claimant had a "fair" ability to understand, remember, and apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (ECF No. 13, PageID #: 1080). She also opined that Claimant was incapable of low stress work, would be "off task" for at least 25% of a workday due to her symptoms, and would miss at least five days of work per month due to her impairments or treatment. (ECF No. 13, PageID #: 1081).

The ALJ found Nurse Stufflebean's opinion unpersuasive and explained that the opinion's reliance on Claimant's self-reports calls into question its accuracy and reliability. Additionally, the ALJ found that the opinion was inconsistent with Nurse Stufflebean's own records as well as the remainder of the medical records. (ECF No. 13, PageID #: 116).

### 7. Jatinder S. Rana, M.D.

Dr. Jatinder S. Rana opined that Claimant's mental impairments would prevent her from

having success in the workplace. (ECF No. 13, PageID #: 1140). He further noted that the claimant was unable to hold down gainful employment and often isolated to her home, leaving only once or twice per week. (ECF No. 13, PageID #: 1140).

The ALJ found Dr. Rana's opinion unpersuasive and explained that the opinion's reliance on Claimant's self-reports calls into question its accuracy and reliability. Additionally, the ALJ found that the opinion was inconsistent with his own records as well as the remainder of the medical records. (ECF No. 13, PageID #: 116).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3.    The claimant has the following severe impairments: obesity; bilateral degenerative joint disease and osteoarthritis of the knees; asthmatic bronchitis; right shoulder adhesive capsulitis/moderate degenerative changes; diabetes mellitus; post-traumatic stress disorder (PTSD); mood disorder; borderline personality characteristics; binge eating disorder; and mental impairments variously described as depression, dysthymic disorder, cyclothymic disorder, anxiety, and panic disorder without agoraphobia (20 CFR 404.1520(c) and 416.920(C)).

> 5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop but can never kneel, crouch, or crawl. In addition, she can never work around hazards, such as at unprotected heights or around moving mechanical parts. She can never operate a commercial motor vehicle and can never work in conditions of humidity and wetness, in extreme heat or cold, in conditions where there are concentrated vibrations, and in conditions where there is concentrated exposure to dust, odors, fumes, or other pulmonary irritants. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace----for example, no assembly line or conveyor belt work. She is limited to simple work-related decisions and can respond appropriately to occasional interaction with supervisors and coworkers, but with no team or tandem work with coworkers,

and no interaction with the general public.  Finally, she is limited
to tolerating few changes in the work setting, defined as routine job
duties that remain static and are performed in a stable, predictable
work setting. Any necessary changes need to occur infrequently
and be adequately and easily explained.

10.   Considering the claimant's age, education, work experience,
and residual functional capacity,  there are jobs that exist in
significant numbers in the national economy that the claimant can
perform (20 CFR 404.1569, 404.1569a, 416.969, and  416.969a).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is

supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council

becomes the final decision of the Secretary and is subject to review by this Court." *Olive v.*

*Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007)

(citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535,

538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently."

*Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in

determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

### 1. Analysis of Medical Opinions[3]

Claimant's first assignment of error argues that the ALJ erred by finding "unpersuasive" the opinions of Claimant's treating physician, Dr. Morris, and treating nurse, Ms. Stufflebean. Claimant suggests these opinions should have been given controlling weight and that the ALJ failed to give sufficient reasons for giving Claimant's treating sources less than controlling weight. The Commissioner argues that controlling weight analysis did not apply to Claimant's

---

[3] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

medical opinions and that substantial evidence supports the ALJ's determination. The Court agrees that substantial evidence supports the ALJ's determinations.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 17, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

### A. Substantial evidence supports the ALJ finding Dr. Morris's opinion unpersuasive.

On April 17, 2018, Dr. Morris completed a "Diabetes Questionnaire". (ECF No. 13, PageID #: 1074). Dr. Morris noted that Claimant suffered from type II diabetes and extremity pain/paresthesias. (ECF No. 13, PageID #: 1074). By circling from a list of optional responses,

Dr. Morris opined that Claimant could: work two hours a day; stand for 30 minutes at a time; sit for 60 minutes at a time; stand/walk for a total of two hours in a workday; occasionally lift five pounds; frequently lift five pounds; never balance; and need to frequently elevate legs in a workday. (ECF No. 13, PageID #: 1074). The ALJ found Dr. Morris's opinion "unpersuasive" and explained that the opinion was not supported by reference to any information he relied upon in forming his opinion. (ECF No. 13, PageID #: 115). Additionally, the ALJ explained that Dr. Morris's limited treatment of Claimant called into question the accuracy and reliability of his findings regarding her functional levels. (ECF No. 13, PageID #: 115). Finally, the ALJ explained that the opinion was inconsistent with evidence of Claimant's "chronic noncompliance with treatment". (ECF No. 13, PageID #: 115).

Claimant takes issue with two of the ALJ's reasons for finding Dr. Morris's opinion unpersuasive. First, Claimant disagrees with the ALJ's reasoning that Dr. Morris's two months' treatment of Claimant called into question the opinion's reliability yet found the state agency opinions somewhat persuasive despite a lack of treating history. (ECF No. 15 at 15). The Court finds that argument unpersuasive. The ALJ did not solely rely on the length of the treating history. Rather, the ALJ specifically noted that Dr. Morris failed to support his opinion with any information, while the state agency reviewing physicians' opinions were supported with the review of the medical evidence and function reports available to them. (ECF No. 13, PageID #: 114). Supportability of an opinion is one of the most important factors. 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2). Here, sufficient evidence supports the ALJ's finding that Dr. Morris failed to support his opinion with information that he relied upon.

Second, Claimant argues that the ALJ improperly relied upon Claimant's noncompliance with treatment when he found Dr. Morris's opinion unpersuasive. (ECF No. 15 at 12). Claimant

14

does not argue that the ALJ incorrectly found that she was noncompliant; instead, she appears to argue that the ALJ did not consider her reasons for being noncompliant. Claimant argues that the ALJ's citations indicate that Claimant "seems to have struggled with a diabetic diet and exercise." (ECF No. 15 at 12-13). Additionally, Claimant argues (without record citation) that her noncompliance with exercise is consistently attributed to knee pain. (ECF No. 15 at 13). Claimant's reasons for failing to comply with treatment and diet are proper considerations when determining Claimant's credibility. *See Lenarz v. Comm'r of Soc. Sec*., No. 5:12-cv-1542-JSG, 2013 WL 5234121, at *13 (N.D. Ohio Sept. 17, 2013) (A claimant's noncompliance with treatment is a valid consideration with determining credibility.). Nonetheless, numerous healthcare providers noted Claimant's noncompliance with treatment, whether by not following her diet (ECF No. 13, PageID #: 554, 571, 792-93, 1063, 1067, 1098, 1261, 1271, 1277, 1293, 1300) or not exercising as instructed (ECF No. 13, PageID #: 554, 571, 1067, 1271). Claimant argues in her reply that she was only supposed to exercise "as tolerated" and that she could not tolerate any exercise. However, the Court agrees with the Commissioner that the consistent medical recommendations for exercise and diet undermine Claimant's proposed reasons for failing to comply.

The ALJ's decision demonstrates that the he considered Claimant's reasons for failing to comply with diet and exercise when he determined that her failure to comply indicated that her symptoms were less severe that she alleged and less severe than indicated by Dr. Morris. (ECF No. 13, PageID #: 112). Weighing the evidence in the record is the ALJ's responsibility. *See Collins v. Comm'r of Soc. Sec*., 357 F. App'x 663, 670 (6th Cir. 2009) ("It is the ALJ's place, and not the reviewing court's, to 'resolve conflicts in evidence.'" (*quoting Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987))); *cf. White*, 572 F.3d at 281 ("Administrative findings are not

15

subject to reversal merely because substantial evidence exists in the record to support a different conclusion." (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal quotation marks omitted))).

Accordingly, sufficient evidence supports the ALJ's determination that Dr. Morris's opinion was unpersuasive.

### B. Substantial evidence supports the ALJ's finding that Ms. Stufflebean's opinions were unpersuasive.

On May 11, 2018, Nurse Stufflebean completed a mental impairment questionnaire. (ECF No. 13, PageID #: 1077-1081). Nurse Stufflebean opined that Claimant was moderately limited in her ability to understand, remember, and apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (ECF No. 13, PageID #: 1080). She then opined that Claimant was incapable of low stress work, would be "off task" for at least 25% of a workday due to her symptoms, and would miss more than four days of work per month due to her impairments or treatment. (ECF No. 13, PageID #: 1081). The ALJ found Nurse Stufflebean's opinion unpersuasive and explained that opinion's reliance on Claimant's self-reports calls into question its accuracy and reliability. (ECF No. 13, PageID #: 116). Additionally, the ALJ found that the opinion was inconsistent with Nurse Stufflebean's own records as well as the remainder of the medical records. (ECF No. 13, PageID #: 116).

Claimant argues that the ALJ erred by finding Nurse Stufflebean's opinion less persuasive than the state agency reviewing psychologists' opinions because Nurse Stufflebean had a "long-standing treating history" with Claimant prior to drafting the opinion. (ECF No. 15 at 16).

Under the new analysis for medical opinions, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is

not required to discuss other factors – such as the source's relationship with the claimant. 20 C.F.R. § 404.1520c(b)(2).

Here, sufficient evidence supports the ALJ's finding that Nurse Stufflebean's opinion as unpersuasive. First, the opinion's extreme limitations, such as Claimant's inability to perform low stress work, stay on task, and attendance, are not supported by the record. Treatment notes frequently show benign mental symptoms and demonstrate that Claimant was "alert and oriented with intact attention, memory, cognition, thought processes, thought content, insight, judgment, and intelligence" (ECF No. 13, PageID #: 113 (citing Tr. 401, 410, 868-69, 875-76, 884-85, 888-89, 921, 931, 940, 959, 976)) and that she had a "cooperative attitude, normal speech and eye contact, and no difficulties with appearance or hygiene" (ECF No. 13, PageID #: 113 (citing Tr. 868-69, 875, 884, 888, 921, 940, 959)). Thus, substantial evidence supports the ALJ's finding that Nurse Stufflebean's extreme opinion is not supported by the record.[4]

Second, Nurse Stufflebean's opinion is internally inconsistent. On the questionnaire, Nurse Stufflebean rated Claimant's functional limitations as "moderate", meaning Claimant had a fair capacity to perform independently, appropriately, effectively and on a sustained basis. (ECF No. 13, PageID #:1080).[5] Despite first opining that Claimant has a fair ability to interact with others, she later states that Claimant is "incapable of 'low stress' work" because she "becomes highly anxious/panic ridden with normal work related conversations, attempts to interview…" (ECF No. 13, PageID #: 1080). These opinions are inconsistent. Internal inconsistency is a valid consideration when evaluating a medical opinion. *See Martin v. Comm'r*

---

[4] Claimant does not cite to any support in the record for these extreme limitations. (See ECF No. 15 at 16, ECF No. 18).

[5] Nurse Stufflebean gave no opinion on Claimant's ability to concentrate, persist, or maintain pace. (ECF No. 13, PageID #:1080).

*of Soc. Sec.*, 658 F. App'x 255, 258 (6th Cir. 2016) ("The ALJ here found that the 2009 report lacked support in objective medical evidence and was internally inconsistent. Thus, the ALJ applied the proper analysis to the 2009 report."); *Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) ("[T]he ALJ also determined that Deters's opinion was internally inconsistent, which is an independent reason for granting it little weight.").

Accordingly, substantial evidence supports the ALJ's determination that Nurse Stufflebean's opinion was both internally inconsistent and inconsistent with the record.

Additionally, the ALJ noted that Nurse Stufflebean's opinion was based mostly on Claimant's self-reports, calling into question the accuracy and reliability of the assessment. An ALJ can give less weight to an opinion if it is based on a claimant's subjective allegations that themselves are properly rejected. *See, e.g., Serrano v. Berryhill*, No. 1:17-cv-2644-PAG-GJL, 2019 WL 691311, at *8 (N.D. Ohio Jan. 30, 2019) ("[T]he ALJ properly determined that Dr. Wax's opinion was based largely on Plaintiff's subjective complaints rather than an independent evaluation of her capabilities.") (rep. & recommendation), *adopted*, 2019 WL 669634, (Feb. 19, 2019). As discussed below, the ALJ's decision addresses Claimant's subjective complaints and explains why those complaints are not entirely consistent with the record.

Thus, substantial evidence supports the ALJ's finding that Nurse Stufflebean's opinion was unpersuasive.

### 2. The RFC is Supported by Substantial Evidence

In Claimant's second assignment of error she argues that the ALJ failed to take into account that she requires a walker for both ambulation and balance and "grossly" overstated Claimant's ability to walk and stand. Additionally, Claimant argues that the ALJ did not properly evaluate her off-task behavior and absenteeism. Claimant argues these errors violate the

requirements of SSR 96-8p.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). SSR 96-8p states that: "[t]he adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8P, 1996 WL 374184, (S.S.A. July 2, 1996). Factors to be considered include: medical history; medical signs and laboratory findings; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication); reports of daily activities; lay evidence; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. SSR 96-8P.

Here, the ALJ determined Claimant's RFC as follows:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and  416.967(b) except: She can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop but can never kneel, crouch, or crawl.  In addition, she can never work around hazards, such as at unprotected heights or around moving mechanical parts. She can never operate a commercial motor vehicle and  can  never work in  conditions of humidity and wetness, in extreme heat or cold, in conditions where there are  concentrated  vibrations, and in conditions where there is concentrated exposure to dust, odors, fumes, or  other pulmonary irritants.  She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace----for example, no assembly line or conveyor belt work.  She is limited to simple work-related decisions and can respond appropriately to occasional interaction with supervisors and coworkers, but with no team or tandem work with coworkers,

and no interaction with the general public. Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently and be adequately and easily explained.

(ECF No. 13, PageID #: 109-110). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

### A. Substantial evidence supports the ALJ's finding that Claimant does not require the use of a walker.

Claimant argues that the ALJ erred in his conclusion that Claimant does not require the use of a walker. Claimant argues this conclusion conflicts with the "vast majority" of medical evidence with demonstrates her use of a prescribed walker for over four years. (ECF No. 15 at 19). The Commissioner argues that the ALJ's decision is supported by substantial evidence and should not be overruled. The Court agrees with the Commissioner.

Social Security Ruling 96–9p addresses the use of an assistive device in determining RFC and the vocational implications of such devices:

**Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time,

periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.[] For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996), 1996 WL 374185 (footnote omitted).

The Court finds that the ALJ applied the proper legal standards in the instant case and substantial evidence supports his determination that the medical evidence of record did not establish that a walker was medically required. In his decision, the ALJ acknowledged Claimant's use of assistive devices and found the following:

> Finally, although the claimant testified to using a prescribed walker to ambulate, the record does not support a finding that use of an assistive device is medically necessary. Instead, the record indicates that the claimant received a prescription for the walker after requesting it from a medical provider due to self-reported "falls" (21F/32).   These falls were rarely complained of by the claimant and are unsupported by the record, which does not document notable reductions in strength or motor functioning during the periods at issue (1F- 23F).   Instead, the claimant's gait was generally described as normal, steady, or independent (l0F/5, 9; l7F/3, 6, 10; 19F/5).  In addition, the record rarely-if ever-notes use of a walker during the relevant periods, suggesting that the claimant does not require a walker to ambulate. This evidence further suggests that the claimant can perform the range of light work indicated in the above residual functional capacity.

(ECF No. 13, PageID #: 112).

SSR 96–9p requires medical documentation of the need for the assistive device, not just notations relating to a claimant's continued use of an assistive device. *See Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (collecting cases). Claimant's prescription for the walker is not sufficient to establish its medical necessity. *See Spies v. Saul*, No. 19-cv-2928, 2020 WL 5044027, at *16-17 (N.D. Ohio Aug. 26, 2020) (although the claimant had prescriptions for assistive devices, there was no error in the RFC because the claimant "does not identify any evidence that meets the standard articulated in SSR 96-9p," which requires documentation of the circumstances where an assistive device is needed) (collecting cases). Claimant points to no medical record establishing that the walker was

medically necessary or the specific circumstances under which it was needed.[6] Accordingly, the ALJ correctly applied SSR 96–9p in finding that the walker was not medically necessary and substantial evidence supports that determination. *See Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018). "While substantial evidence may exist to the contrary, the decision of the ALJ is supported by his review of the medical evidence which failed to contain documentation of the medical necessity for the [] walker, and failed to provide a description of the circumstances for which [a walker was] needed, such as whether [one was] needed all of the time, sometimes, in certain situations, for certain distances, or on certain terrains, or any other information." *Perry*, 2018 WL 1393275, at *5 (citing SSR 96–9p).

The Court finds that the ALJ applied the proper legal standards and substantial evidence supported his decision to find that a walker was not medically necessary.

### B. Substantial evidence supports the ALJ's determination of Claimant's off-task behavior and absenteeism.

Claimant argues that the ALJ further failed to properly evaluate Claimant's off-task behavior and absenteeism. (ECF No. 15 at 20). In support, Claimant argues that she breaks out into hives and has panic attacks at the thought of submitting job applications, is easily exhausted and would require frequent breaks to catch her breath, and needs to frequently elevate her legs throughout the day. (ECF No. 15 at 20). Additionally, Claimant points to the opinion of Ms. Stufflebean who opined that she would be off-task in excess of 25% of a given work day and absent four day s or more in a given month. (ECF No. 15 at 20). The Commissioner argues that Claimant's evidence in support consists mainly of her own allegations and that the ALJ appropriately declined to accept the allegations. Additionally, the Commissioner argues that the

---

[6] Claimant cites to the consistent appearance of the walker with seat in her list of prescriptions. (*See* ECF No. 18 at 6,7). However, a prescription does not establish medical necessity.

ALJ appropriately declined to include limitations from Ms. Stufflebean's opinion after determining they were unpersuasive. (ECF No, 17 at 23). The Court agrees with the Commissioner.

As explained below, the ALJ properly evaluated Claimant's subjective complaints and explained they were not "entirely consistent with the medical evidence and other evidence in the record." (ECF No. 13, Page ID #: 113).  As explained above, substantial evidence supports the ALJ's decision to find Ms. Stufflebean's opinion "unpersuasive". Thus, substantial evidence supports the ALJ's decision not to include additional limitations of being off task or absent from work in the RFC finding.

### 3.  ALJ's Credibility Finding

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-

appropriate manner." SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). Although a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec*., No. 3:18CV1639, 2019 WL 2465273, at \*10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Claimant states that the ALJ failed to examine the record in its entirety and instead focused only on the facts that supported his conclusion. (ECF No. 15 at 22).  However, Claimant fails to specify any fact that the ALJ failed to consider. Instead, Claimant raises a general objection to the ALJ's determination. (ECF No. 15 at 22 ("Examination of the record shows countless examples of [Claimant's] continued difficulties and struggles as her conditions have manifested and worsened with time. The ALJ's selective reading of the record and evidence fails to consider the greater picture of [Claimant's] disability, and results in a mischaracterization and misclassification of her statements regarding the intensity and persistence of her symptoms and conditions.")). It is not this Court's responsibility to comb the record and make Claimant's argument for her.

Nonetheless, the Court finds that ALJ's decision considered Claimant's subjective complaints and explained why he found them unsupported. (ECF No. 13, Page ID #: 111-114). Specifically, the ALJ explained that

Although the claimant alleged being able to perform limited exertional or postural activities due to pain and shortness of breath, medical providers throughout the periods at issue typically described her to be in no acute distress during appointments (2F/6, 9; 7F/4; 12F/5; 14F/6).  During such examinations, the providers did not regularly note a significant reduction in the claimant's ranges of motion, strength, or cranial nerves (2F/63, 65, 99; 18F/2, 5; 19F/2; 21F/98, 114, 121).  Furthermore, the record indicates that surgery was neither suggested nor required for the claimant's physical ailments, but rather that her pain was treated conservatively with physical therapy, pain medication, and injections (2F/l 7; 18F/2, 5; 19F).  This evidence suggests that the claimant's physical impairments are not as debilitating as alleged and supports a finding that she can perform light work with reduced postural duties and exposure to workplace hazards.

Other allegations are similarly unfounded.  Although the claimant testified to shortness of breath, respiratory examinations conducted during the periods at issue found the claimant to have normal breath sounds and effort with lungs clear to auscultation and percussion (2F/9; 21F/64, 69, 77, 82, 86, 98, 114).  Pulmonary function studies revealed normal results, while medical imaging of the claimant's chest showed no acute intrathoracic abnormalities (2F/190).  In fact, a medical provider noted that there was "no obvious cause apparent" for the claimant's shortness of breath on exertion (12F/7).  Likewise, although the claimant testified to spending much of her day in a supine position, there is no evidence in the record that such resting or resting in an elevated position is medically necessary. Treatment notes do not document that the claimant's impairments or medication side effects would require her to lay down or rest for prolonged periods (1F-23F). Finally, although the claimant testified to using a prescribed walker to ambulate, the record does not support a finding that use of an assistive device is medically necessary. Instead, the record indicates that the claimant received a prescription for the walker after requesting it from a medical provider due to self-reported "falls" (21F/32).  These falls were rarely complained of by the claimant and are unsupported by the record, which does not document notable reductions in strength or motor functioning during the periods at issue (1F- 23F).  Instead, the claimant's gait was generally described as normal, steady, or independent (l0F/5, 9; l7F/3, 6, 10; 19F/5).  In addition, the record rarely-if ever-notes use of a walker during the relevant periods, suggesting that the claimant does not require a walker to ambulate. This evidence further suggests that the claimant can perform the range of light work indicated in the above residual functional capacity.

26

Additionally, the record indicates that the claimant failed to follow treatment recommendations regarding her diabetes, obesity, and binge eating disorder, suggesting that these impairments are not as severe as alleged.  Medical providers often recommended that the claimant make changes to her diet and perform physical activity five times per week for thirty minutes each time to alleviate symptoms from these impairments (14F/20, 25, 29).  Nevertheless, treatment notes document that the claimant did not follow-or continue to follow-such recommendations (14F/34; 21F/124).  Although the claimant testified at the hearing that she does not exercise because of knee pain, providers rarely described her to have difficulties ambulating and, in fact, generally described  her gait as normal, steady, or independent during the periods at issue (10F/5, 9; l 7F/3, 6, 10;  19F/5; Hearing Testimony).  In addition, providers did not regularly note a significant reduction in the claimant's ranges of motion, strength, or cranial nerves (2F/63, 65, 99; 18F/2, 5; 19F/2; 21F/98, 114, 121). This demonstrates a possible unwillingness on behalf of the claimant to do what is necessary to improve her conditions. It also suggests that her symptoms are not as severe as she purports and supports a finding that she is able to perform the range of light work indicated in the above residual functional capacity.

Moreover, despite her physical impairments, the record suggests that the claimant is able to engage in a relatively normal level of daily activity.   For instance, in her function report, she reported being able to prepare simple meals, grocery shop, and perform personal care (SE).  At the hearing, she stated that she lives with her teenage son, whom she homeschools, and that she is able to babysit, watch television, use a computer or smart phone, and drive (Hearing Testimony).  This evidence suggests that the claimant's functioning is not as limited as alleged. Therefore, any limitation resulting from the claimant's physical impairments is adequately accommodated by the residual functional capacity, which restricts her to light work with reduced postural duties and exposure to workplace hazards.

Likewise, the claimant's mental impairments result in some degree of limitation, but not to the extent alleged.  The claimant has a conservative treatment history that consisted primarily of counseling and medication management during the periods at issue (lF; 8F; l0F; 16F; l 7F; 23F).  Although she alleges difficulty concentrating, mental status examinations typically found her to be alert and oriented with intact attention, memory, cognition, thought processes, thought  content,  insight, judgment, and intelligence

(2F/10, 19; 8F/2, 3; 9F/6, 7; l0F/5, 6, 9, 10; 12F/5; 13F/7, 16; 14F/14, 31).  This evidence comports with the claimant's reported activities of daily living, as well as with her presentation at the hearing.  Her function report notes that she is able to follow instructions well, pay bills, count change, handle a savings account, and use a checkbook or money  orders-activities that indicate an intact capacity to maintain concentration for simple tasks and  understand, remember, and apply simple information to tasks at hand (5E/5, 7).  At the hearing, she  was able to follow along during questioning and provide clear and relevant testimony to the  undersigned without asking for much repetition or explanation, suggesting that she is able to  concentrate on simple tasks and understand, remember, and apply information to specific questions.   She also indicated that she is able to watch television, use a computer or smart phone, homeschool her son, and drive-activities that require concentration to complete (Hearing Testimony).  This evidence supports a finding that the claimant is capable of performing simple, routine and repetitive tasks at a non-production rate pace and making simple work-related decisions.

The evidence also suggests that the claimant can tolerate occasional interaction with supervisors and coworkers, no interaction with the general public, and few changes in the work setting. Although the claimant alleges difficulty being around others and dealing with stress, providers  frequently described her as cooperative, though she often appeared anxious or depressed (8F/2, 3;  9F/6; l0F/5, 9, 10; 13F/16; 14F/14).  Her providers also noted her to have normal speech and eye contact during most appointments and no difficulties with her appearance or hygiene (8F/2, 3; 9F/6; l0F/5, 9; 12F/5; 13F/16; 14F/14).  These findings comport with the claimant's reported activities of daily living and presentation at the hearing. Her function report notes that she has no  difficulties getting along with others or with authority figures, talks to neighbors and friends each day, and shops in stores and via computer-indicating an ability to appropriately interact with  others and appropriately manage herself for extended periods (5E/7, 8). At the hearing, she communicated and responded to questioning in an appropriate manner.  She also stated that she is able to drive and interact with others via social media-activities that require some capacity to interact with others and manage oneself appropriately for extended periods (Hearing Testimony). The totality of this evidence demonstrates that, despite her mental impairments, the claimant maintains an ability to tolerate occasional interaction with supervisors and coworkers, no interaction with the general public, and few changes in the work setting.

(ECF No. 13, Page ID #: 111-114).

Accordingly, the ALJ's decision addresses Claimant's subjective complaints and explains why those complaints are not entirely consistent with the record. The ALJ's decision satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. Moreover, Claimant fails to identify any evidence that the ALJ did not consider. There exists, therefore, no compelling reason for the Court to disturb the ALJ's finding. *Cross,* 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: 6/15/2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).